1
2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

3
4
5
6
7
8
9
10
11
12
13
14

| | |
|---|---|
| CHARLES and JAMIE GIBBS; WILLIAM and CORIE CONNELLY; GALEN and LESLIE SATTERLEE; GAIL HENRICHSEN; DUSTIN and MARTHA BARNETT; DAVE and HOLLY MARCUS; and KELLY BABB individually and on behalf of those similarly situated,<br><br>       Plaintiffs,<br><br>vs.<br><br>UPONOR CORPORATION, a Finnish corporation; UPONOR, INC., an Illinois corporation; WIRSBO COMPANY, an Illinois company; and UPONOR WIRSBO COMPANY, an Illinois company,<br><br>       Defendants. | Case No. 12-cv-290-DRH-PMF<br><br><br>**JURY TRIAL REQUESTED** |

15

## CLASS ACTION COMPLAINT

16
17
18
19
20
21
22
23
24

     Plaintiffs CHARLES and JAMIE GIBBS, WILLIAM and CORIE CONNELLY, GALEN and LESLIE SATTERLEE, GAIL HENRICHSEN, DUSTIN and MARTHA BARNETT, DAVE and HOLLY MARCUS, and KELLY BABB (hereinafter collectively referred to as "Plaintiffs"), individually and on behalf of those similarly situated in Central and Southern Arizona, including, but not limited to, Maricopa, Pinal and Pima Counties, through their undersigned counsel, brings this class action against defendants UPONOR CORPORATION, a Finnish corporation; UPONOR, INC., an Illinois corporation; WIRSBO COMPANY, an Illinois company; UPONOR WIRSBO COMPANY, an Illinois company (collectively "Defendants" or "Uponor entities"). The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

25
26
27
28

# I.

## THE NATURE OF THIS ACTION

1.      Plaintiffs, individually and on behalf of those similarly situated in Central and Southern Arizona, including, but not limited to, Maricopa, Pinal and Pima Counties, bring this class action on behalf of all owners of homes with plumbing systems utilizing high zinc content yellow brass potable water plumbing system components manufactured by and/or on behalf of the Uponor entities, including, but not limited to, those components manufactured in conformance with ASTM F877, F1960 and/or F2080 (collectively "Components"), as well as any person or entity who has paid for repairs or damage caused by the failure of the Components, which are defective.

2.      Plaintiffs have been damaged as a result of the design, manufacture, development, advertisement, marketing and sale of the Components and as a result of the installation of the Components in their homes.

3.      Uponor entities have designed, manufactured, sold and/or distributed their Components for PEX plumbing systems throughout Central and Southern Arizona, including, but not limited to, Maricopa, Pinal and Pima Counties.

4.      Uponor entities have warranted, advertised and guaranteed that the high zinc content yellow brass Components and their PEX plumbing systems had a lengthy warranty that expressly covered consequential damages arising from leaks or failures in the plumbing systems.

5.      Uponor entities have warranted and advertised their high zinc content yellow brass Components and PEX plumbing systems as "proven," "carefully engineered," "reliable," and resistant to corrosion.

6.      These representations however proved untrue when the high zinc content yellow brass Components began to prematurely fail across Central and Southern Arizona, including, but not limited to, Maricopa, Pinal and Pima Counties.  These failures have resulted or will result in the leaching of impermissible amounts of lead into the potable-water-delivery systems and substantial damage to property other than the Components themselves prior to the Components reaching their useful life.

7.      Plaintiffs and the classes they seek to represent have suffered damage as a result of owning homes with defective Components.

8.      The failures of the Components have and/or will in the future cause water leaks that will in turn cause damage to other property, including the homes and personal property of the owners.

9.      Plaintiffs, individually and on behalf of all those similarly situated, seek damages arising from and proximately caused by all of the Defendants' wrongful conduct, as well as declaratory and injunctive relief, as set forth below.

10.     The Uponor entities held out the use of the high-zinc-content brass that is commonly referred to as "yellow brass" as suitable for use in the potable water plumbing systems of homes throughout Central and Southern Arizona, including, but not limited to, Maricopa, Pinal and Pima Counties.  High-zinc-content yellow brass, however, has long been known to suffer from de-alloying corrosion attack known as dezincification, which is an injury that happens to the Components when they are exposed to the water in Central and Southern Arizona, including, but not limited to, Maricopa, Pinal and Pima Counties.  Plaintiffs bring this action to seek relief from these defective Components and defective homes containing the defective Components and to redress the injuries that it has caused them and similarly situated owners of homes constructed in Central and Southern Arizona, including, but not limited to, Maricopa, Pinal and Pima Counties.

11.     Plaintiffs intend to seek, pursuant to FRCP 23(b)(3), certification of a class for damages and other relief on behalf of the owners of all homes constructed in Central and Southern Arizona, including, but not limited to, Maricopa, Pinal and Pima Counties that contain or contained the defective Components.

**II.**

**PARTIES**

12.     Plaintiffs bring this action to toll all applicable statutes of limitations and/or statutes of repose and reserve all rights on behalf of themselves and all similarly situated plaintiffs/owners/class members.

13.     Plaintiffs are citizens of the State of Arizona and owners of residential property in Central and Southern Arizona, including, but not limited to, Maricopa, Pinal and Pima Counties, with potable water plumbing systems utilizing the Defendants' high zinc content yellow brass components:

///

a.   Plaintiffs, CHARLES and JAMIE GIBBS, are citizens of the State of Arizona and owners of a home located at 4107 E Ravenswood Dr., Gilbert, Arizona.  The plumbing system installed in Plaintiffs' home utilizes the Defendants' high zinc content yellow brass plumbing components.

b.   Plaintiffs, WILLIAM and CORIE CONNELLY, are citizens of the State of Arizona and owners of a home located at 3459 E. Arianna, Gilbert, Arizona.  The plumbing system installed in Plaintiffs' home utilizes the Defendants' high zinc content yellow brass plumbing components.

c.   Plaintiffs, GALEN and LESLIE SATTERLEE, are citizens of the State of Arizona and owners of a home located at 1877 West Macaw Drive, Chandler, Arizona.  The plumbing system installed in Plaintiffs' home utilizes the Defendants' high zinc content yellow brass plumbing components.

d.   Plaintiff, GAIL HENRICHSEN, is a citizen of the State of Arizona and owner of a home located at 21803 N. Kirkland Drive, Maricopa, Arizona.  The plumbing system installed in Plaintiff's home utilizes the Defendants' high zinc content yellow brass plumbing components.

e.   Plaintiffs, DUSTIN and MARTHA BARNETT, are citizens of the State of Arizona and owners of a home located at 43689 W. Cahill Drive, Maricopa, Arizona.  The plumbing system installed in Plaintiffs' home utilizes the Defendants' high zinc content yellow brass plumbing components.

f.   Plaintiffs, DAVE and HOLLY MARCUS, are citizens of the State of Arizona and owners of homes located at 16417 South 28th Avenue, Phoenix, Arizona and 42164 W. Rummy Road, Maricopa, Arizona.  The plumbing systems installed in Plaintiffs' homes utilize the Defendants' high zinc content yellow brass plumbing components.

///

g.   Plaintiff, KELLY BABB, is a citizen of the State of Arizona and owner of a home located at 34530 North Hariana Road, San Tan Valley, Arizona.  The plumbing system installed in Plaintiff's home utilizes the Defendants' high zinc content yellow brass plumbing components.

14.   Plaintiffs have standing, pursuant to FRCP 23(a), to bring all of the claims set forth in this Complaint as representatives of the proposed class of similarly situated owners of homes in the developmental communities in which Plaintiffs' homes are located and homes in Central and Southern Arizona, including, but not limited to, Maricopa, Pinal and Pima Counties, with potable water plumbing systems utilizing the Uponor entities' high zinc content yellow brass plumbing components, including those Components manufactured to be in conformance with ASTM F877, F1960 and F2080.

15.   All of the owners of homes in the developments set forth in this Complaint and homes in Central and Southern Arizona, including, but not limited to, Maricopa, Pinal and Pima Counties, that contain or contained the Defendants' Components have been injured as a result of the presence of these defective Components.  Blatant manifestations of this defect have caused additional damages including, but not limited to loss of structural integrity and/or strength of the brass Components, weeping, leaks, blockages, restriction and/or reduction of water flow and/or pressure, loss of use and function of the plumbing system and related improvements and/or appliances, and the leaching of lead into the potable water plumbing systems, resultant damage to the homes and the work of others (e.g., water loss, damage to framing, drywall and/or other building materials), resultant damage to water quality, economic losses including costs of maintenance and/or repair, and all reasonable fees, costs, interest and/or expenses associated therewith.  The damages are expected to increase over time as the defective Components continue to corrode.  The homes with the Components must be refitted and/or replumbed in order to ensure that use of the defective Components has been completely abandoned in those homes.  Plaintiffs estimate that it will cost approximately $10,000 per residence to replace or replumb the defective Components and/or plumbing systems.

16.   Plaintiffs are informed, believe, and thereupon allege that all of the Defendants, proximately caused the injuries and damages herein alleged:

a. Defendant UPONOR, INC. is an Illinois corporation that is responsible for the design, manufacture, and/or distribution of the defective Components. UPONOR, INC. is the agent of its parent, UPONOR CORPORATION, with whom it acted as a single, collective and common business enterprise.

b. Defendant UPONOR WIRSBO COMPANY is an Illinois company that is responsible for the design, manufacture, and/or distribution of the defective Components, both directly and indirectly, by and through its alter-egos, members, agents, predecessors-in-interest and/or other representatives.

c. Defendant WIRSBO COMPANY is an Illinois company that is responsible for the design, manufacture, and/or distribution of the defective Components, both directly and indirectly, by and through its alter-egos, members, agents, predecessors-in-interest and/or other representatives.

d. Defendant UPONOR CORPORATION is a Finnish corporation that is responsible for the design, manufacture, and/or distribution of the defective Components, both directly and indirectly, by and through its agents and collective business enterprise partners, including, but not limited to UPONOR, INC.

i. The Uponor entities form a worldwide group or conglomerate of interrelated companies, with UPONOR CORPORATION at the apex, that are commonly engaged in the line of business that is designing, developing, testing, manufacturing, distributing, supplying, marketing, selling, and warranting plumbing and climate-control products for the construction and public utility industries.

ii. UPONOR CORPORATION's subsidiaries, UPONOR, INC.; WIRSBO COMPANY; and UPONOR WIRSBO COMPANY, perform functions that are compatible with and assist UPONOR CORPORATION in the pursuit of its own business.

iii. But for the existence of its subsidiaries, UPONOR CORPORATION would have to undertake to perform substantially similar services as those undertaken by its subsidiaries. UPONOR CORPORATION exerts control over its subsidiaries that is so pervasive and continual that they may be considered the agents, members, alter egos, or instruments of one another and especially their apex company, UPONOR CORPORATION, regardless of the maintenance of corporate

formalities.

e.   Plaintiffs allege that at all relevant times, each and every Uponor Defendant was acting as the duly authorized agent of each and every other Uponor Defendant with respect to each and every wrong committed by each and every other Uponor Defendant.

17.   Plaintiffs allege and assert that they have had to retain legal counsel from the firms of CKGH Law; Canepa, Riedy & Rubino; Carraway & Associates, LLC; Kemp Jones & Coulthard, LLP; Lynch Hopper, Salzano & Smith, LLP; Maddox, Isaacson & Cisneros; and Goldenberg, Heller Antognoli & Rowland, P.C., to represent them in this legal action, and are therefore entitled to recover damages and entitlements therein, their reasonable attorneys' fees, expert fees, costs, expenses, and interest upon the same as part of any judgment entered herein, including the Arizona Consumer Fraud Act.

## III.

## JURISDICTION AND VENUE

18.   This Court has jurisdiction over the subject of this matter pursuant to 28 U.S.C. 1332(d)(2).  Plaintiffs have pled this as a class action on behalf of more than one hundred (1,000) Class members who are citizens and residing in the State of Arizona and the amount in controversy exceeds Five Million Dollars ($5,000,000.00) and any and all relief Plaintiffs and class members seek is within the jurisdictional limits of this Court.

19.   This Court has personal jurisdiction over all Defendants because their activities in the Southern District of Illinois have been systematic, continuous, and substantial.

20.   This Court has jurisdiction over Defendant UPONOR CORPORATION because it is the alter ego of its subsidiaries and/or its subsidiaries are its members, agents, and/or predecessors-in-interest.  The Defendants act as a single, collective, and common business enterprise for Defendant UPONOR CORPORATION's own business.  There is such a unity of ownership and interest between Defendant UPONOR CORPORATION and the other Defendants and its subsidiaries that the ownership and interest of one is inseparable from the other.  Adherence to the corporate fiction would

sanction fraud and promote injustice. Defendant UPONOR CORPORATION exerts control over its subsidiaries that is so pervasive and continual that the subsidiaries may be considered its agents, members, or instruments. But for this important relationship, Defendant UPONOR CORPORATION would have to undertake to perform substantially similar services as its subsidiaries.

21.     Venue is proper because all Defendants reside in Illinois, and all Defendants are subject to personal jurisdiction in the Southern District of Illinois because of their systematic, continuous, and substantial general business contacts within the Southern District.

**IV.**

**CLASS ACTION ALLEGATIONS**

22.     A class action is alleged pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. The class consists of: (1) all owners homes in Central and Southern Arizona, including, but not limited to, Maricopa, Pinal and Pima Counties with the Defendants' high zinc content yellow brass potable water plumbing Components and (2) owners of homes that paid for repairs or sustained damages as a result of the Defendants' high zinc content yellow brass potable water plumbing Components.

23.     Plaintiffs estimate that their proposed class consists of in excess of one thousand (1,000) owners in Central and Southern Arizona, including, but not limited to, Maricopa, Pinal and Pima Counties and is thus so numerous that the joinder of actions by these members would be impracticable. The putative class members have all been injured in the same way because they own homes and/or buildings that contain or contained the Defendants' high zinc content yellow brass potable water plumbing Components, which are defective in that they are manufactured from high-zinc content brass which will be damaged due to dezincification corrosion when exposed to water. Questions of law and fact, the answers of which are common to the class, that arise on account of the claims asserted for this defect include, but are not limited to: 1) are high-zinc-content brass plumbing components damaged due to dezincification corrosion when they are exposed to water (fact); 2) does this damage to the Components due to dezincification corrosion attack render the Components defective (law and fact); and 3) did the Defendants owe the class members the duty to provide defect-free Components and/or

homes or buildings (law).

24.     The story of this single, defective product is the same for each of the proposed class members.  Because the proposed class members' claims arise from the same course of events, identical issues of liability, causation, negligence, strict liability, and breach are shared by and between each of them and the claims of the Plaintiffs are typical of the claims of the putative class members and could be asserted by any of them.

25.     Plaintiffs are fair and adequate representatives for this proposed class because they do not have any claims that are antagonistic to the claims of the putative class members.

26.     The claim of each individual class member is for a relatively small monetary amount, approximately $15,000 (including an estimated cost-to-repair, reasonable attorney's fees and costs), and most of the class members are natural persons who do not regularly engage in litigation. Defendants, on the other hand, are large corporations that are not strangers to litigation and, in fact, have insurance that will cover the cost of their defense of these claims.  Plaintiffs are thus informed and believe that the putative class members do not have an interest in individually controlling the prosecution of their claims for this defect.

27.     It is desirable to concentrate the litigation of these claims in this forum because of the diversity of the parties and the amount in controversy.

28.     Plaintiffs do not perceive that this proposed class will be difficult to manage. And their attorneys have the experience, knowledge, and resources to adequately and properly represent the interests of the proposed class.

## V.

## GENERAL ALLEGATIONS

29.     The Defendants sell various high zinc content brass plumbing Components utilized in conjunction with PEX potable water plumbing systems.

30.     PEX is an acronym for cross-linked polyethylene. Polyethylene is a raw material and the "X" on the generic name "PEX" refers to the cross-linking of the polyethylene across its molecular chains.

31.     For decades, plumbers and homeowners used copper piping for portable water plumbing systems. Copper is and has been accepted by virtually all plumbing codes throughout the United States.

32.     In the 1980s, plumbing system manufacturers in the United States began selling and plumbers began installing potable water plumbing systems with tubing made from polyethylene plastic. Plumbing systems using tubing made from polyethylene plastic were touted by manufacturers as being easier to install, cheaper and longer-lasting than copper plumbing systems.

33.     Polyethylene plumbing systems, however, quickly proved to be poorly conceived, designed and manufactured systems, and began to fail prematurely in the field, causing substantial property damage.  A substantial amount of litigation ensued as a result of the widespread, premature failure of polyethylene plumbing systems. Several class actions were filed and settlements in those cases exceeded $1.5 billion.

34.     At least partially in response to the failure of polyethylene plumbing systems, virtually all manufacturers ceased manufacturing polyethylene plumbing systems for sale in the United States. In addition, most plumbing codes eventually prohibited the installation of polyethylene plumbing systems.

35.     Following the demise of polyethylene systems, the Defendants and other companies began selling alternative, non-copper plumbing products in the United States.

36.     Specifically, the Defendants marketed and sold plumbing systems using PEX tubing for use in residential and commercial settings.

37.     The Defendants touted their PEX plumbing systems as being easier to install, cheaper and longer-lasting than copper plumbing systems.

38.     The plumbing systems that were installed and used in the class members' homes are a PEX-type plastic pipe product connected using the Defendants' high zinc content yellow brass Components.

39.     The Components and PEX pipes installed and used in the class members' homes are designed to distribute potable water.

40.     Defendants sell or sold a PEX plumbing system utilizing high zinc content yellow brass Components that purportedly conform to various ASTM standards, including ASTM F877, F1960 and F2080.

41.     The Defendants' Components are easily identified by product markings and stamps on the Components. Defendants sold these systems under a number of different trade names, including but not limited to "ProPex," "AquaPex," and "APR" plumbing systems.

42.     The Defendants were negligent in selling the Components for a number of reasons, including their decision to actively market, promote, and sell components made from high zinc content brasses.

43.     Brass is an alloy primarily composed of copper and zinc.  High zinc-content brass Components installed and used as part of the plumbing systems in the homes are corroding due to a well-known chemical reaction called dezincification.  "High zinc content" means a copper alloy having a zinc content percentage of the overall weight of the Components on average between 32%-42% and not otherwise treated to resist dezincification.  Dezincification is a form of selective leaching or removal of an element (zinc) from the brass alloy by corrosion.  As a result, the high-zinc-content brass Components also leach impermissible amounts of lead into the potable water, become porous, brittle, and/or blocked with zinc oxide and/or zinc carbonate, inevitably leading to restricted water flow and/or pressure, reduced material strength, corrosion, cracks, and/or leaks.  Therefore, specification, installation and use of high-zinc-content brass Components in the class members' homes cause substantial injury/damage to the members by damaging and impairing the ability of the plumbing system to effectively operate as a potable-water-delivery system and results in the leaching of impermissible amounts of lead into the potable-water-delivery systems.

44.     Defendants knew or should have known that the high-zinc content brass alloy used for the Components they sold and marketed made the Components such that they have and/or will

prematurely fail and leach impermissible levels of lead into the potable water.

45.     The design, materials choices, and manufacturing practices of the high zinc content yellow brass Components marketed and sold by Defendants have created a product that is defective and begins to fail and leach impermissible levels of lead into the potable water on its first day of use, even if perfectly installed in its intended environment.

46.     Because of their defective design and manufacture, the Components, including those installed at Plaintiffs' homes, have failed in their intended purpose.

47.     Because of their defective design and manufacture, the Components are inherently unsafe, defective and are substantially certain to fail within the express warranty provided with the Components and/or within the expected useful life of the Components.

48.     Because of the Components' defective design and manufacture, the homes, including the Plaintiffs' homes and  buildings, have failed in their intended purpose as habitable dwellings.

49.     Because of the Components' defective design and manufacture, the homes, including the Plaintiffs' homes and buildings, are inherently unsafe, defective and are substantially certain to fail within the express warranty provided with the homes and/or within the expected useful life of the homes.

50.     Plaintiffs and class members own, have installed, or have paid for damages caused by the defective Components that have already failed and are in the process of failing prematurely and thus have suffered or are reasonably certain to suffer actual injury well in advance of the warranted and expected life of the Components and the homes. These damages include, without limitation, dezincification corrosion, the leaching of zinc and lead into the potable water, plumbing blockages, reduced and/or restricted water flow and water pressure, loss of function, loss of structural integrity, cracks, weeps, leaks, systems failures, and damage to other property, appliances and components.

51.     The degradation of the Components has caused damage to Plaintiffs' property other than

the Components sold by the Defendants. For example, the dezincification process damages other components of the plumbing system not sold by the Defendants like fixtures as well as appliances such as water heaters, ice makers, water treatment systems, dishwashers and clothes-washing machines by depositing damaging scale and buildup on those components and the leaching of impermissible amounts of lead into the potable-water-delivery systems.

52.     Plaintiffs are informed, believe, and thereupon allege that at all times relevant herein, Defendants were the officers, agents, employees, representatives, affiliates, members, predecessors, successors-in-interest and/or alter egos of one another in doing the things alleged herein and in so doing were acting in the scope of their respective authority and agency.

53.     Plaintiffs are informed, believe, and thereupon allege that the high-zinc content brass Component deficiencies and defective conditions have proximately caused damage to the Plaintiffs and the class.  The blatant manifestations of this dezincification injury include the dezincification corrosion itself, leaching lead into the potable-water-delivery system, plumbing blockages, reduced water flow and/or pressure, loss of function, loss of structural integrity, cracks, weeps, leaks, system failures, and/or damage to other property, appliances, and components.  Plaintiffs are informed and believe that these damages are pervasive and exist in the homes.

54.     The homes may have suffered damages in other ways and to other extents not presently known to Plaintiffs, and not specified above.  Plaintiffs reserve the right to amend this Complaint upon discovery of any additional damages not referenced herein, and/or to present evidence of the same at the time of trial of this action.

55.     Plaintiffs allege and assert that their claim of defective construction and this legal action have all been brought in a timely manner and within the statute of limitations and repose periods, if applicable.

///

///

///

///

## VI.

## FIRST CAUSE OF ACTION

### (Breach of Implied Warranties of Fitness for Particular Purpose, Merchantability, Habitability, Quality, and Workmanship)

56.     Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

57.     Plaintiffs are informed, believe, and thereupon allege that Defendants were engaged in and are responsible for the design, development, testing, manufacture, distribution, supply, marketing, sale and warranting of defective high zinc content yellow brass plumbing Components and potable-water-delivery systems installed and used in homes constructed throughout Central and Southern Arizona, including, but not limited to, Maricopa, Pinal and Pima Counties and that Plaintiffs and their members were the intended beneficiaries and/or the intended third-party beneficiaries of each and every such act and/or warranty.

58.     By designing, manufacturing, marketing, supplying, and/or causing the high-zinc-content brass Components to be installed in the homes, Defendants expressly and/or impliedly warranted that said Components and systems were free of defective materials, were of merchantable quality, were suitable and fit for the ordinary purpose for which said systems and components were intended, were safe, were proper,  and were habitable.  Defendants also actively sought to distribute their products in this marketplace by making certain representations and warranties about their plumbing system to national, state, and/or local agencies such as building authorities where the product system was marketed and sold as approved for use in accordance with national, state, and/or local laws. As a result of these representations and warranties, national, state, and/or local agencies approved the high zinc content brass Components and plumbing systems for use, conveying the defective information and warranties to Plaintiffs and their members.

59.     Defendants impliedly warranted that the high zinc content Components and plumbing systems were fit for the particular purpose they were intended, and that said systems and components would perform in a defect-free manner.

60.     Plaintiffs are informed, believe, and thereupon allege that Defendants breached said

warranties by failing to adequately and properly develop, design, manufacture, test, assemble, distribute, market, sell, and/or warrant the high zinc content Components and plumbing systems in the homes and/or by failing to provide defect-free plumbing systems in the homes.

61.     As a direct and proximate result of the breaches of the implied warranties by Defendants, Plaintiffs and their members have been, and will continue to be damaged as more fully described herein including, but not limited to product failures, dezincification corrosion, leaks, blockages, loss of use and function of the plumbing systems and related improvements and/or appliances provided by others, resultant damage to the homes and work of others (e.g., water loss, damage to framing, drywall and/or other building materials), resultant damage to water quality, including leaching of lead from the high zinc content Components into the potable-water-delivery systems of the homes, economic losses including costs of maintenance and/or repair, and all reasonable fees, costs, interest, and/or expenses associated therewith.  These damages and others are expected to increase over time as the defective systems and components continue to fail.

62.     As a further direct and proximate result of the breaches of the implied warranties by Defendants, Plaintiffs and their members have suffered damages in an amount not fully known but believed to be within the jurisdiction of this Court in that they have been and will hereafter be required to perform works of repair, restoration, and construction to all or portions of the homes to prevent further damage and to restore the homes to their proper habitable condition.  Plaintiffs and their members will establish the amount of their damages at the time of trial according to proof.

63.     Plaintiffs incorporate the prayer for relief as though set forth herein.

**VII.**

**SECOND CAUSE OF ACTION**

**(Breach of Express Warranties)**

64.     Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

65.     The Defendants did prepare, distribute, and provide express warranties as part of the Defendants' potable-water-delivery systems, the high zinc content Components and the homes.  These warranties provide coverage for certain defects in these plumbing systems, high zinc content

Components and homes.  These warranties were intended for use by customers and end-users of the plumbing systems and high zinc content Components and the purchasers of the homes, including Plaintiffs and their members.

66.     The Defendants expressly warranted that the high-zinc-content brass Components were developed, designed, manufactured, and distributed in conformance with certain ASTM Standards, including ASTM F877, F1960 and F2080 and any and all applicable safety standards, building and product codes, standards, and regulations.  In so doing, Defendants expressly warranted that their plumbing systems were fit, sound, and safe, and would remain so for a reasonable period of time.

67.     Plaintiffs are informed, believe, and thereupon allege that the express warranties made and used by Defendants have at all relevant times been written in the form of, by example, and without limitation: product catalogues, instruction manuals, ASTM Standards and/or other codes or standards, specifically including NSF standards and/or codes, advertising flyers, brochures, sales literature, promotional packages, signs, magazine and newspaper articles and advertisements, all designed to promote the introduction and ultimate sale of the defective high zinc content Components in the State of Arizona, and to promote the belief that these systems and/or homes had been properly developed, designed, manufactured, and distributed for safe and effective use in this jurisdiction.

68.     As a direct and proximate result of the breaches of the express warranties by Defendants as herein alleged, Plaintiffs and their members have been, and will continue to be, damaged as more fully described herein including, but not limited to blockages, restricted water flow and/or pressure, reduced material strength and structural integrity, weeping, leaks, cracks, product failures, dezincification corrosion, loss of use and function of the plumbing systems and related improvements and/or appliances provided by others, resultant damage to the homes and work of others (e.g., water loss, damage to framing, drywall and/or other building materials), resultant damage to water quality, including the leaching of lead into the homes' potable-water-delivery systems, and economic losses including costs of maintenance and/or repair, and all reasonable fees, costs, interest, and/or expenses associated therewith.  These damages and others are expected to increase over time as the defective systems and components continue to fail.

69.     As a further direct and proximate result of the breaches of the express warranties by

Defendants as herein alleged, Plaintiffs and their members have suffered injuries and/or damages to property in an amount not fully known but believed to be within the jurisdiction of this Court in that they have been and will hereafter be required to perform works of repair, restoration, and construction to all or portions of the homes to prevent further damage and to restore the homes to their proper condition.  Plaintiffs and their members will establish the amount of their damages at the time of trial according to proof.

70.     Plaintiffs incorporate the prayer for relief as though set forth herein.

## X.

## FIFTH CAUSE OF ACTION

**(Negligence, including Negligent Misrepresentation, Failure to Warn/Instruct, and Negligent Selection)**

71.     Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

72.     Plaintiffs allege that Defendants knew or should have known that the high zinc content Components were not properly or adequately designed, tested, engineered, manufactured, marketed, distributed, marked, labeled, or represented (including instructions and warnings) such that Plaintiffs and their members have been substantially damaged or injured thereby, and that Defendants knew or should have known that the homes, which contain defective high-zinc-content brass Components and attendant high-zinc-content brass plumbing components, are defective because they are not and were not developed, designed, manufactured, assembled, constructed, plumbed, distributed, marketed, sold, and/or warranted in accordance with applicable laws, codes, and/or standards of care.

73.     Plaintiffs allege Defendants were under a duty to exercise ordinary care to avoid reasonably foreseeable harm to Plaintiffs and their members and knew or should have foreseen with reasonable certainty that Plaintiffs and/or their members would suffer injury and/or monetary damages as set forth herein by using, specifying for use, and/or installing the high zinc content Components in the homes.

74.     Plaintiffs are informed, believe, and thereupon allege that Defendants breached said duty by negligently designing, developing, manufacturing, distributing, marketing, and/or selling

unreasonably unsafe and defective plumbing systems and attendant parts, which were installed and used in the homes, and/or by selecting and/or installing said plumbing systems and components in the homes, or causing the same to be installed, in a manner inconsistent with manufacturer's specifications, local, state and national codes, and/or standards of performance within the industry, as well as failing to select and/or use materials that are capable of performing in a defect-free manner.

75.     Defendants' negligence includes the failure to provide adequate information to local building code authorities.  Plaintiffs, their members, and/or their predecessors-in-interest are members of the class of persons that the building codes and ordinances were designed to protect.  Such violations are negligence per se on the part of Defendants.

76.     Defendants' negligence includes misrepresentations about the defective plumbing systems and components given to Plaintiffs, their members, and/or their representatives, upon which they relied to their detriment and damage.

77.     As a direct and proximate result of the Defendants' negligence, Plaintiffs and their members have been, and will continue to be, damaged as more fully described herein including, but not limited to, blockages, restricted water flow and/or pressure, reduced material strength and structural integrity, weeping, leaks, cracks, product failures, dezincification corrosion, loss of use and function of the plumbing system and related improvements and/or appliances provided by others, resultant damage to the homes and work of others (e.g., water loss, damage to framing, drywall and/or other building materials), resultant damage to water quality, including the leaching of lead into the homes' potable-water-delivery systems, and economic losses including costs of maintenance and/or repair, and all reasonable fees, costs, interest and/or expenses associated therewith.  These damages and others are expected to increase over time as the defective systems and components continue to fail.

78.     As a further direct and proximate result of Defendants' negligence, Plaintiffs and their members have suffered injuries and/or damages in an amount not fully known but believed to be within the jurisdiction of this Court in that they have been and will hereafter be required to perform works of repair, restoration, and construction to all or portions of the homes to prevent further damage and to restore the homes to their proper habitable condition.  Plaintiffs and their members have also been compelled to resort to litigation against Defendants to judicially resolve their differences.

79.     Plaintiffs and their members will establish the amount of their damages at the time of trial according to proof.

80.     The damages and/or injuries suffered by Plaintiffs and their members, are of the kind that ordinarily do not occur in the absence of negligence, negligence per se, carelessness, and/or as a result of unworkmanlike conduct.

81.     The damages and/or injuries suffered by Plaintiffs and their members were caused by an agency or instrumentality over which Defendants had the exclusive right or control, and which was not mishandled or otherwise changed after Defendants relinquished control.

82.     The damages and/or injuries suffered by Plaintiffs and/or their members were not due to any voluntary action on the part of Plaintiffs and/or their members.

83.     Defendants have superior knowledge and/or are in a better position to explain the damages and/or injuries suffered by Plaintiffs and their members.

84.     Plaintiffs incorporate the prayer for relief as though set forth herein.

## XI.

## SIXTH CAUSE OF ACTION

## (Strict Products Liability)

85.     Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

86.     At all relevant times herein, Defendants, developed, designed, manufactured, supplied, distributed, marketed, sold, warranted, selected materials, and installed, or caused to be installed, defective plumbing systems and component parts in the homes, notably defective high zinc content Components, that have prematurely failed due to dezincification corrosion, so as to cause the homes to be in a dangerous, defective, unsafe, and unfit condition for habitation.

87.     Defendants knew and/or should have known and expected that their products would be placed in the stream of commerce and on the market, and would reach Plaintiffs and their members without substantial change and would be installed in the same defective condition in which they were originally designed, manufactured, and sold.

88.     Defendants failed to adequately and properly design, develop, manufacture, distribute,

market, warn, sell, or select the plumbing systems and component parts in the homes in that said system and component parts are defective and/or otherwise unsuitable for use, resulting in failures and damage to Plaintiffs and their members.  For example, but not limitation, the plumbing systems and components have failed (dezincified), caused damage to other property, and caused blockages, restricted water flow and/or pressure, reduced material strength and structural integrity, weeping, leaks, cracks, product failures, stress, corrosion, cracking, loss of use and function of the plumbing systems and related improvements and/or appliances provided by others, leaching of lead into the homes' potable-water-delivery systems, and other damages.  Defendants had prior notice and knowledge of these defects and potential damages, and failed to act timely and accordingly to remedy these defects.

89.     As a direct and proximate result of the foregoing, Plaintiffs and their members have suffered injuries and/or damages in an amount not fully known but believed to be within the jurisdiction of this Court in that they have been and will hereafter be required to perform works of repair, restoration, and construction to all or portions of the homes to prevent further damage and to restore the homes to their proper habitable condition.  Plaintiffs and their members will establish the amount of their damages at the time of trial according to proof.  As a further direct and proximate result of the foregoing, Plaintiffs and their members have been compelled to resort to litigation against Defendants to judicially resolve their differences.

90.     Plaintiffs' and their members' damages and/or injuries, are sufficient circumstantial evidence of proof of the existence of a defect or an unreasonably dangerous condition, and evidence of a defect or an unreasonably dangerous condition, is properly inferred under the doctrine of res ipsa loquitur.

91.     Plaintiffs incorporate the prayer for relief as though set forth herein.

## XII.

## SEVENTH CAUSE OF ACTION

### (Declaratory and Equitable Relief)

92.     Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

93.     Plaintiff and class members seek a Court declaration of the following:

a.   The high zinc content yellow brass Components have a defect that causes them to prematurely fail, resulting in water damage to property, leaching of impermissible amounts of lead into the potable-water-delivery systems and the necessity of the removal and replacement of the Components;

b.   The high zinc content yellow brass Components have a defect in workmanship and material that causes failures;

c.   Defendants knew of the defects in the high zinc content yellow brass Components;

d.   Defendants shall re-audit and reassess all prior warranty claims regarding the high zinc content yellow brass Components, including claims previously denied in whole or in part; and

e.   Defendants shall establish an inspection program and protocol to be communicated to all class members that will require Defendants to pay for damage caused by the high zinc content yellow brass Components and to replace those systems.

**XIII.**

**EIGHTH CAUSE OF ACTION**

**(Violation of Arizona Consumer Fraud Act)**

94.   Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

95.   Defendants, have engaged in deceptive trade practices that are prohibited by Section 44-1522(a) of the Arizona Revised Statutes:

a.   Defendants knowingly made false representations as to the characteristics, materials, standards, ingredients, uses, and benefits of the high zinc content yellow brass Components and plumbing systems, but not limited to representing that these materials and systems were defect-free and suitable for residential use in Central and Southern Arizona, including, but not limited to, Maricopa, Pinal and Pima Counties;

b.   Defendants represented that the high zinc content yellow brass Components and

21

plumbing systems were of a particular standard, quality, grade, style, or model and knew or should have known that they are of another standard, quality, grade, style, or model including, but not limited to life expectancy for these materials and systems;

c. Defendants knowingly made other false representations in transacting the purchase and sale of the high zinc content yellow brass Components and plumbing systems; and

d. Defendants knowingly failed to disclose material facts in connection with the purchase and sale of the high zinc content yellow brass Components and plumbing systems, but not limited to the fact that these materials and systems would suffer from dezincification corrosion when exposed to water in Central and Southern Arizona, including, but not limited to, Maricopa, Pinal and Pima Counties.

96. But for the Defendants' unfair trade practices, Plaintiffs would not have been damaged because their homes would not have been plumbed with these defective systems and materials.

97. Plaintiffs incorporate the prayer for relief as though set forth herein.

98. Pursuant to A.R.S. §§ 44-1521 – 44.1534, Plaintiffs and their members, as victims of Defendants' consumer fraud, are entitled to recover the damage they have sustained as a result of that fraud and any costs and reasonable attorneys' fees they incur as a result.

## XIV.

## NINTH CAUSE OF ACTION

### (Alter Ego)

99. Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

100. Plaintiffs are informed, believe, and thereupon allege that UPONOR CORPORATION (Finnish Uponor Defendant) is the parent or grandparent corporation of UPONOR, INC.; WIRSBO COMPANY; and UPONOR WIRSBO COMPANY (North American Defendants). The North American Defendants form, with UPONOR CORPORATION at the apex, a worldwide group of interrelated companies that are commonly engaged in the line of business that is designing, developing, testing, manufacturing, distributing, supplying, marketing, selling, and warranting plumbing and climate-control products for the construction and public utility industries.

101. Plaintiffs are informed, believe, and thereupon allege that UPONOR CORPORATION exercises complete control over the activities and operations of its subsidiary/child entities, UPONOR, INC.; WIRSBO COMPANY; and UPONOR WIRSBO COMPANY, to the extent that these subsidiary/child entities are the mere alter egos of their parent, UPONOR CORPORATION.

102. Plaintiffs are informed, believe, and thereupon allege that the unity of interest and ownership between the Defendants is such that the subsidiary/child entities are inseparable from their parent, UPONOR CORPORATION.

103. To recognize these subsidiary/child entities as viable corporate entities separate and apart from UPONOR CORPORATION and thus insulate UPONOR CORPORATION from liability to Plaintiffs would, under these circumstances, sanction injustice and operate as a fraud against Plaintiffs. Plaintiffs should be entitled to pierce the corporate veil of the subsidiary/child entities behind which UPONOR CORPORATION has attempted to hide in committing its acts and omissions that have and will continue to damage Plaintiffs and their members.

104. Plaintiffs incorporate the prayer for relief as though set forth herein.

## XVI.

### PRAYER

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. Certification of this matter as a class action and appointing Plaintiffs and their counsel to represent the classes defined above;

2. Compensation for all damages suffered by Plaintiff and the classes defined above;

3. Damages suffered by Plaintiffs and the class, including but not limited to damages for violations of the Arizona Consumer Fraud Act (A.R.S. §§ 44-1522(A);

4. An award for reasonable attorneys' fees and costs and disbursements incurred herein;

5. Enjoining Defendants from denying warranty claims for failed high zinc content yellow brass Components;

23

6.      Enjoining Defendants from selling high zinc content yellow brass Components;

7.      Declaring the rights and obligations of the parties as prayed for;

8.      For general and special damages pursuant to all statutory or common law causes of action, all in an amount in excess of $75,000;

9.      For consequential damages, including, but not limited to attorneys' fees and costs including all fees and expenses incurred before the filing of this Complaint;

10.     For the cost to repair and/or replace the defective plumbing systems and products;

11.     For costs and expenditures to correct, cure, or mitigate injustices and damages caused or that will be caused by the defects and/or deficiencies as set forth herein;

12.     Economic losses associated with the defects and/or deficiencies, including loss of use, relocation, and alternative housing;

13.     For an award of reasonable attorneys' fees, costs, expert costs, and expenses incurred in investigating the constructional defects in the homes and prosecuting all of these claims, including all fees and expenses incurred before the filing of this Complaint;

14.     For an award of pre-judgment interest on all monetary damages, fees, and costs awarded in this action;

15.     For a declaration that the instant action is properly commenced and resolves any and all disputes between Plaintiffs and their members and Defendants that arise out of the constructional defects, conduct, transactions, and occurrences set forth herein;

16.     For a declaratory judgment adjudicating the relative rights and duties of the parties; and

17.     For such further declaratory, equitable, or other relief as the Court may deem necessary and appropriate under the circumstance.

///

# XVII.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated this 5th day of April, 2012.     **GOLDENBERG HELLER ANTOGNOLI & ROWLAND, P.C.**

/s/  *Mark C. Goldenberg, Esq.*
Mark C. Goldenberg, Esq. (IL Bar 00990221)
Thomas Rosenfeld, Esq. (IL Bar 06301406)
Kevin P. Green, Esq. (IL Bar 06299905)
2227 S. State Route 157
P.O. Box 959
Edwardsville, Illinois 62025
Attorneys for Plaintiffs

Chris Henrichsen, Esq. (AZ Bar 013256)
**CKGH LAW P.C.**
16515 South 40th Street, Suite 143
Phoenix AZ 85048

James D. Carraway, Esq. (CA Bar 143592 & NV Bar 7642)
**CARRAWAY & ASSOCIATES, LLC**
7674 W. Lake Mead Blvd., Suite 215
Las Vegas, Nevada 89128

Scott K. Canepa, Esq. (NV Bar 4556)
**CANEPA RIEDY & RUBINO**
851 South Rampart Blvd. #160
Las Vegas, Nevada 89145

J. Randall Jones, Esq. (NV Bar 1927)
**KEMP, JONES & COULTHARD, LLP**
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89109

Francis I. Lynch, Esq. (NV Bar 4515)
**LYNCH, HOPPER, SALZANO & SMITH, LLP**
1640 Alta Drive, #11
Las Vegas, Nevada 89106

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Robert C. Maddox, Esq. (NV Bar 4002)
**MADDOX, ISAACSON & CISNEROS, LLP**
3811 West Charleston Blvd. #110
Las Vegas, Nevada 89102

Attorneys for Plaintiffs