

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHARLES and JAMIE GIBBS; WILLIAM and ) Case No. 12-CV-290-DRH-PMF
CORIE CONNELLY; GALEN and LESLIE )
SATTERLEE; GAIL HENRICHSEN; DUSTIN )
and MARTHA BARNETT; DAVE and HOLLY )
MARCUS; and KELLY BABB, individually and )
on behalf of those similarly situated; ) **MEMORANDUM OF LAW IN SUPPORT**
) **OF MOTION OF UPONOR, INC.,**
       Plaintiffs, ) **WIRSBO COMPANY, and UPONOR**
) **WIRSBO COMPANY PURSUANT TO 28**
       v. ) **U.S.C. § 1404 FOR TRANSFER/CHANGE**
) **OF VENUE**
UPONOR CORPORATION, a Finnish )
corporation; UPONOR, INC., an Illinois )
Corporation; WIRSBO COMPANY, an Illinois )
Company; UPONOR WIRSBO COMPANY, an )
Illinois company; )
)
       Defendants. )
_____ )
)

    Defendants UPONOR, INC., UPONOR WIRSBO COMPANY and WIRSBO COMPANY

(solely for purposes of this pleading hereinafter collectively "UPONOR") by and through their

attorneys, Ted L. Perryman, Esq. of the firm of ROBERTS PERRYMAN, for their Motion to

Transfer/Change of Venue pursuant to 28 U.S.C. §1404(a) state as follows:

## I.     FACTUAL BACKGROUND

### A.     ALLEGATIONS OF PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT.

    Plaintiffs filed their Amended Class Action Complaint ("Complaint") in this Court on May

24, 2012 (Doc. 2.)  The named plaintiffs are Charles and Jamie Gibbs, "citizens of the State of

Arizona and owners of a home located at 4107 E. Ravenswood Dr., Gilbert, Arizona" (Doc. 2, par.

13a); William and Corie Connelly, "citizens of the State of Arizona and owners of a home located

at 3459 E. Arianna, Gilbert, Arizona" (Doc. 2, par. 13b); Galen and Leslie Satterlee, "citizens of

the State of Arizona and owners of a home located at 1877 West Macaw Drive, Chandler, Arizona"

(Doc. 2, par. 13c); Gail Henrichsen, a "citizen of the State of Arizona and owner of a home located

1   at 21803 N. Kirkland Drive, Maricopa, Arizona (Doc. 2, par. 13d); Dustin and Martha Barnett,

2   "citizens of the State of Arizona and owners of a home located at 43869 W. Cahill Drive,

3   Maricopa, Arizona" (Doc. 2, par. 13e); Dave and Holly Marcus, "citizens of the State of Arizona

4   and owners of homes located at 16417 South 28th Ave., Phoenix, Arizona and 42174 W. Rummy

5   Road, Maricopa, Arizona" (Doc. 2, par. 13f); and Kelly Babb, a "citizen of the State of Arizona and

6   owner of a home located at 34530 North Hariana Road, San Tan Valley, Arizona" (Doc. 2, par.

7   13g). Each of the named Plaintiffs allegedly own homes in which the plumbing system installed

8   "utilizes the Defendants' high zinc content yellow brass plumbing components." (Doc. 2, pars. 13a-

9   g.)

10      Plaintiffs bring their allegations "individually and on behalf of those similarly situated in

11   Central and Southern Arizona, including, but not limited to, Maricopa, Pinal and Pima Counties."

12   (Doc. 2, par. 1.) The class allegations are made "on behalf of all owners of homes with plumbing

13   systems utilizing high zinc content yellow brass potable water plumbing systems utilizing high zinc

14   content yellow brass potable water plumbing system components manufactured by and/or on behalf

15   of the Uponor entities. . ." (Doc. 2, par. 1.) Plaintiffs allege that Uponor "designed, manufactured,

16   sold and/or distributed their Components . . .throughout Central and Southern Arizona, including,

17   but not limited to, Maricopa, Pinal and Pima Counties." (Doc. 2, par. 3.)  Plaintiffs allege that

18   Uponor made certain warranties with respect to plumbing components and systems, which

19   allegedly "proved untrue when the high zinc content yellow brass Components began to

20   prematurely fail across Central and Southern Arizona, including, but not limited to, Maricopa,

21   Pinal and Pima Counties." (Doc. 2, par. 6.)

22      The allegations of Plaintiffs' Complaint particularly single out the impact that conditions

23   within Arizona have in causing their alleged damages. Plaintiffs allege that Uponor held out the use

24   of "high-zinc-content brass that is commonly referred to as 'yellow brass' as suitable for use in the

25   potable water plumbing systems of homes throughout Central and Southern Arizona, including, but

26   not limited to, Maricopa, Pinal and Pima Counties. High-zinc-content yellow brass, however, has

27   long been known to suffer from de-alloying corrosion attack known as dezincification, which is an

28

2

1  injury that happens to the Components when they are exposed to the water in Central and Southern

2  Arizona, including, but not limited to, Maricopa, Pinal and Pima Counties." (Doc. 2, par. 10.)

3       Similarly, Plaintiffs' class allegations are Arizona-based. The named Plaintiffs allege they

4  have standing, pursuant to FRCP 23(a), to bring their claims "as representatives of the proposed

5  class of similarly situated owners of homes in the developmental communities in which Plaintiffs'

6  homes are located and homes in Central and Southern Arizona, including, but not limited to,

7  Maricopa, Pinal and Pima Counties, with potable water plumbing systems utilizing the Uponor

8  entities' high zinc content yellow brass plumbing components. . ." (Doc. 2, par. 14.) Plaintiffs

9  further allege that "All of the owners of homes in the developments set forth in this Complaint and

10 homes in Central and Southern Arizona. . .that contain or contained the Defendants' Components

11 have been injured as a result of the presence of these defective Components." (Doc. 2, par. 15.)

12      The putative Plaintiffs' class consists of: "(1) all owners of homes in Central and Southern

13 Arizona, including, but not limited to, Maricopa, Pinal and Pima Counties with the Defendants'

14 high zinc content yellow brass potable water plumbing Components and (2) owners of homes that

15 paid for repairs or sustained damages as a result of the Defendants' high zinc content yellow brass

16 potable water plumbing components." (Doc. 2, par. 22.) Plaintiffs "estimate that their proposed

17 class consists of in excess of one thousand (1,000)" homeowners, all of them located in Central or

18 Southern Arizona. (Doc. 2, par. 23.)

19      The allegations contained in the Plaintiffs' causes of action are also particular to Arizona.

20 For example, Plaintiffs allege that warranties made by the Defendants were "all designed to

21 promote the introduction and ultimate sale of the defective high zinc content Components in the

22 State of Arizona" (Doc. 2, par. 67.) In fact, Plaintiff's "Eighth Cause of Action" purports to set

23 forth a claim for "Violation of Arizona Consumer Fraud Act," alleging that "Defendants, have

24 engaged in deceptive trade practices that are prohibited by Section 44-1522(a) of the Arizona

25 Revised Statutes," in that "Defendants knowingly made false representations as to the

26 characteristics, materials, standards, ingredients, uses, and benefits of high zinc content yellow

27 brass Components and plumbing systems, but not limited to representing that these materials and

28 systems were defect-free and suitable for residential use in Central and Southern Arizona," and that

3

1  "Defendants knowingly failed to disclose material facts in connection with the purchase and sale of
2  the high zinc content yellow brass Components, " including that "these materials and systems
3  would suffer from dezincification corrosion when exposed to water in Central and Southern
4  Arizona" (Doc. 2, par. 95).

5       Plaintiffs allege that failures of the plumbing systems and components within their Arizona
6  homes have caused damage to those homes and other property (Doc. 2, pars. 6-9). According to
7  Plaintiffs' allegations, some homes have already sustained damage necessitating repairs. Plaintiffs
8  further allege that all homes within the putative class will likely require repair and/or replacement
9  of the plumbing systems and/or components within their homes. (Doc. 2, pars. 50-53.) It is
10  reasonable to assume that all of the repairs performed, or anticipated to be performed, will be
11  performed within Arizona, and likely by other Arizona persons or entities.

12       In light of the fact that every plaintiff, every home, and every occurrence of actual or
13  anticipated damage is located in Arizona; and in light of the fact that Plaintiffs have pleaded a
14  cause of action under an Arizona statute, it is appropriate, and serves the interests of justice and
15  judicial economy for both the court and the parties, that this matter be transferred to the District of
16  Arizona.

17       **B.        MINNESOTA LITIGATION**

18       Various plaintiffs have also initiated litigation against Uponor in the United States District
19  Court for the District of Minnesota, involving the same issues alleged in the instant matter.  A
20  lawsuit styled *Tim George, individually and on behalf of all others similarly situated vs. Uponor,*
21  *Inc. successor to Uponor North America, Inc., Wirsbo Company and Uponor Wirsbo, Inc.*, Court
22  No. 12-CV-00249 is currently pending in the United States District Court for the District of
23  Minnesota.  A copy of the *George* putative class action complaint is attached hereto as Exhibit "A."
24       A review of the allegations contained in the *George* complaint reflects that three of the
25  Defendants named in the instant action—Uponor, Inc., Wirsbo Company and Uponor Wirsbo,
26  Inc.—are alleged to be Illinois corporations with their principal place of business in Minnesota.
27  See for example Paragraph 11 of the *George* Complaint, Exhibit "A".  In the *George* Complaint,
28  allegations with respect to "high zinc content" brass fittings and "dezincification" are set forth, just

4

1    as they are alleged in the instant action.  See for example, Paragraph 28 of Exhibit "A."  The

2    *George* Complaint seeks certification of a "nationwide class" with respect to issues concerning

3    dezincification of brass fittings that are virtually identical to the allegations in the instant action.

4    See Paragraph 81 of Exhibit "A."

5            **C.    FACTS PERTAINING TO UPONOR**

6            The Defendants named in this lawsuit have also been named as Defendants in multiple

7    litigations pending throughout the United States, including a lawsuit styled *Edwin K. Slaughter et*

8    *al. v. Uponor Inc. et al,* filed in Clark County, Nevada 2008.  As part of the *Slaughter* litigation, an

9    Affidavit was submitted by the Vice-President–Finance for Uponor, Inc., Bradley J. Beckman.  A

10   copy of the Beckman Affidavit is attached hereto as Exhibit "B."  In relevant part, the Beckman

11   Affidavit states that Uponor, Inc., while incorporated in Illinois, maintains its corporate offices and

12   a manufacturing facility in Apple Valley, Minnesota.  See Paragraph 3 of Exhibit "B."

13   Additionally, the Beckman Affidavit reflects that Uponor, Inc.'s business operations are conducted

14   from offices in Apple Valley, Minnesota, that neither Uponor, Inc., nor any of its employees,

15   directly sold the fitting products at issue, and that any monies paid to Uponor, Inc. in connection

16   with the fitting products "would have been received by UPONOR, INC. in Minnesota."  See

17   Paragraphs 10 and 11 of Exhibit "B."

18           Although Plaintiffs allege, in Paragraph 21 of the instant Complaint, that venue is proper in

19   the Southern District of Illinois because "All Defendants reside in Illinois, and all Defendants are

20   subject to personal jurisdiction in the Southern District of Illinois because of their systematic,

21   continuous, and substantial general business contacts within the Southern District[1]," there is no

22   allegation whatsoever in Plaintiffs' Complaint to support or demonstrate any "activity" of the

23   moving Defendants within the State of Illinois; nor is there any allegation that the Plaintiffs have

24   any connection to the State of Illinois.  Further, there is no allegation that would lend support to the

25   argument that the State of Illinois has any interest with respect to the issues presented by this case,

26   ─────────────────────
     [1] Defendant Uponor Corporation ("UC") strongly disputes that it is resident in Illinois, or that it has
27   any contacts at all within the Southern District, let alone "systematic, continuous, and substantial
     general business contacts" within the District.

28

5

1   as opposed to the State of Arizona, where the Plaintiffs allegedly reside and own property, and
2   where all of the allegedly defective products and the homes containing them are located; or to the
3   State of Minnesota, where Uponor, Inc. is physically located and conducts its business operations.

4           As will be discussed further below, given the foregoing factual background, as well as
5   applicable law concerning the transfer/change of venue of litigation pursuant to §1404(a), Uponor
6   contends that transfer of this action either to the United States District Court for the District of
7   Arizona, or to the United States District for the District of Minnesota, where the *George* case is
8   pending, is appropriate and mandated under applicable law.

9   **II.    LEGAL ARGUMENT**

10          **A.    APPLICABLE LAW**

11          It is well settled that while motions pursuant to Section 1404 are left to the discretion of the
12  Court to adjudicate on an "individualized, case-by-case consideration of convenience and fairness,"
13  there is a specific framework to be used as part of the analysis as to whether transfer is appropriate.
14  *Stewart v. Ricoh Corporation*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed. 2nd 22 (1988).  Thus "a
15  District Court may transfer a civil action for the convenience of the parties and witnesses [and] in
16  the interest of justice. . . to any other district or division where it might have been brought."
17  *Sanders v. Franklin*, 25 F. Supp. 2nd 855 (N.D. Il. 1998) quoting 28 U.S.C. §1404(a).  See also
18  *Forcillo vs. Lemond Fitness, Inc.*, 220 F.R.D. 550 (S.D. Il. 2004).

19          Pursuant to the §1404(a) analysis, transfer of a case is proper if "(1) venue is proper in both
20  the transferee and transferor courts; (2) it is for the convenience of the parties or witnesses; and (3)
21  it is in the interest of justice." *Forcillo*, citing *Coffey vs. Van Dorn Ironworks*, 796 F.2nd 217 (7th
22  Cir. 1986).

23          If, pursuant to the foregoing, venue is proper in both the transferee and transferor courts, the
24  court is to address the second element of the analysis: whether transfer will be for the convenience
25  of the parties or witnesses.  The factors to be considered in assessing the convenience element of
26  §1404(a) include: "(1) the plaintiff's choice of forum; (2) the location of the parties and witnesses;
27  (3) the ease of access to sources of proof ; and (4) the situs of material events." *Forcillo*, citing *ISI*

28

1 | *International Inc. v. Borden Ladner Gervais, LLP.*, 256 F.3rd 548 (7th Cir. 2001); *Humphries v.*
2 | *Coppercrest Leveraged Mortgage Fund, et al.*, 2012 WL 527528 (N.D. Il., 2012).

3 | In undertaking the second portion of the §1404(a) transfer analysis, it has been held that a
4 | Plaintiff's choice of forum is given less deference when the Plaintiff's choice is not its resident
5 | forum. *Piper Aircraft Company v. Reyno*, 454 U.S. 235, 102 S. Ct. 252, 70 L. Ed. 2nd 419 (1981);
6 | see also *Forcillo*, supra, *Humphries*, supra, and *Bryant v. ITT Corp.*, 48 F.Supp. 2nd 829 (N.D. IL.
7 | 1999).

8 | The analysis of the location of the parties and witnesses has been held to be the most
9 | important in the transfer analysis. *Brandon Apparel Group, Inc. v. Quitman Manufacturing Co.*, 42
10 | F. Supp. 2nd 821(N.D. IL 1999). This aspect of the analysis requires that the Court review the
11 | "nature and quality of the witness' testimony with respect to the issues, not just the number of
12 | witnesses in each venue." *Vandeveld v. Christoph*, 877 F. Supp. 1160 (N.D. Il. 1995). As part of
13 | this analysis, a district court should also consider whether witnesses will be subject to compulsory
14 | process, as well as assess the cost to obtain attendance of willing witnesses. *Forcillo*, supra, citing
15 | *Hanley v. Omarc*, 6 F. Supp. 2nd 770 (N.D. Il. 1998).

16 | Additionally, the transfer analysis requires an inquiry into the ease of access to sources of
17 | proof, as well as where the "situs" of material events is located. This may require consideration of
18 | whether non-party witnesses might be uncooperative in responding to a subpoena from the putative
19 | transferor district. *Murphy v. Avon Products, Inc.*, 88 F.Supp. 851, 852-53 (N.D. Ill. 1999).

20 | Finally, as part of the foregoing transfer analysis, the court is to assess whether a transfer of
21 | the case will "promote the interest of justice." The Court in *Forcillo*, supra, held that this
22 | component of the §1404(a) inquiry relates to the "efficient functioning of the courts," rather than
23 | the merits of the underlying dispute. See, *Forcillo*, citing to *Coffey*, 796 F. 2nd at 221. The factors
24 | considered in connection with this "interest of justice" analysis "include the transferee court's
25 | familiarity with applicable law and the congestion of both courts' dockets." See *Forcillo*, supra.

26 | As will be discussed further below, application of the facts set forth above to the applicable
27 | law cited herein clearly reflects that transfer from the Southern District of Illinois to the United

28 |

1  States District Court for the District of Arizona, or, alternatively, the United States District Court

2  for the District of Minnesota, is appropriate, and effectuates the intent of §1404(a).

3  **B.     ALL OF THE §1404(a) ELEMENTS FAVOR TRANSFER OF THIS**
   **LITIGATION FROM THE SOUTHERN DISTRICT OF ILLINOIS**

4

5      **1.     Venue Is Appropriate In Either the United States District Court for**
          **Arizona or the United States District Court for Minnesota**

6

7          As an initial matter, Uponor has not challenged venue in the present court by way of a Rule

8  12(b)(3) motion.  Thus, no issue exists regarding venue in the transferor court.  Consequently,

9  Uponor will address venue in the potential transferee courts.

10         With respect to the United States District Court for the District of Arizona, venue would be

11 proper because all of the named Plaintiffs, as well as a putative class of an "estimated 1,000"

12
   homeowners, are alleged to be citizens and residents of Arizona. All of the property at issue is

13
   located in "Central and Southern Arizona." Transfer of this litigation to Arizona thus comports

14

15 with venue considerations.

16         With respect to transfer to the United States District Court for the District of Minnesota, it

17 is Uponor's contention, once again, that, pursuant to §1391, venue is appropriate.  The principal

18 place of business of the moving Defendants is Apple Valley, Minnesota.  The Affidavit of

19
   Uponor's Vice President-Finance, attached hereto as Exhibit "B", establishes that, although

20
   Uponor, Inc.. is incorporated in Illinois, it maintains its corporate offices and a manufacturing

21
   facility in Apple Valley, Minnesota.  Uponor conducts its business operations from offices in

22
23 Minnesota.  Any monies purportedly paid to Uponor in connection with the products involved in

24 this litigation were received by Uponor, Inc. in Minnesota.  See Exhibit "B".  Plaintiffs allege that

25 the moving Defendants were involved in the design and marketing of the fittings at issue. But any

26
   such conduct that Plaintiffs allege as deficient would have initiated in Minnesota, and certainly not

27
   in Illinois. In fact, no conduct of *any* party is alleged to have occurred in Illinois.

28

1    It is, therefore, Uponor's position that, for purposes of the §1404(a) analysis, venue is

2    proper in both of the potential transferee courts referenced above.

3                    **2.      Transfer of This Case Is Proper Because It Serves The Convenience of
4                               The Parties and Witnesses**

5        As discussed above, there are generally four elements recognized as part of the

6    "convenience" analysis of a §1404(a) transfer.

7        The first element, Plaintiffs' choice of forum, does not militate against transfer of this case.

8    The Supreme Court noted in *Piper Aircraft Company v. Reyno*, 454 U.S. 235, 102 S. Ct. 252, 70
9
10   L.Ed. 2nd 419 (1981) that a plaintiff's choice of forum receives "less deference by the Court when a
11   plaintiff's choice of forum is not the plaintiff's home forum." The case law clearly indicates that, if

12   the plaintiff has chosen, as its forum, a state that is not that of the plaintiff's residence, that choice

13   is accorded less significance in an analysis of the appropriate venue. *Forcillo,* supra, at 220 F.R.D.

14   552, citing *Bryant v. ITT Corp.,* 48 F.Supp. 829, 832. The present Complaint acknowledges that all

15   named Plaintiffs reside in Arizona, that all putative class members reside in Central and Southern

16   Arizona, and that the homes at issue are all located in Arizona.
17

18       So too, although certain of the moving Defendants may be incorporated in the State of

19   Illinois, it is equally apparent that the home jurisdiction of these Defendants is truly located in

20   Minnesota, not Illinois (See Exhibit "B"). The only manifest connection between Illinois and this

21   litigation is the state of incorporation of Defendant Uponor, Inc.

22       In both the *Humphries* case, supra, as well as the *Murphy* decision, supra, Arizona plaintiffs

23   who attempted to bring actions in the District Courts in Illinois had their cases transferred back to
24
25   the District Court of Arizona, in part because of their non-resident status in Illinois. Given the

26   foregoing, the Plaintiffs' choice of forum does not weigh against transfer of this case, and is of no

27   avail to Plaintiffs in connection with the §1404(a) analysis.

28

1    The second element, the location of the parties and witnesses, also clearly favors transfer of

2  this matter from the Southern District of Illinois. There is no question, as is apparent from

3  Plaintiffs' Complaint, that not only are all the Plaintiffs (which Plaintiffs estimate could number

4  1,000 or more, should a class be certified) in Arizona, but that necessary witnesses such as

5
6  plumbers, developers, distributors, and local building and water officials are all in Arizona as well,

7  where they can conveniently and economically produce documents and testify concerning the

8  plaintiff-homeowners' properties where alleged defects are supposedly located,

9    With respect to Uponor, its witnesses are generally located in Minnesota. At no point in the

10  history of the overall brass litigation against Uponor have either Plaintiffs' "of counsel" attorneys

11  (several of whom, all from Las Vegas, are of record for Plaintiffs) or Uponor, produced witnesses

12
    or parties located in Illinois. As discussed, Plaintiffs have no connection to Illinois; and Uponor's

13
    only connection to Illinois is the location of incorporation of Uponor, Inc.

14

15    The issue of compulsory process and the cost of attendance must also be considered. Given

16  the distance between the Southern District of Illinois and either Phoenix, Arizona, or Apple

17  Valley/Minneapolis, Minnesota, it would be extremely difficult for the parties to subject numerous

18  Arizona or Minnesota witnesses to compulsory process, were the case to remain in Illinois. Given

19  the location of the Plaintiffs' homes, should Uponor seek to conduct depositions of representatives

20
    of the local building departments of "Maricopa, Pimal and Pinal Count[ies]," the Arizona

21
    Department of Water Resources, or the Arizona Department of Water Quality, it is unclear how

22
    compulsory process would be achieved with respect to such individuals, or how those witnesses

23
24  could be compelled to appear at an Illinois trial. Even if compulsory process could be affected upon

25  such non-party witnesses, the cost to obtain attendance of those witnesses would be significant.

26    With respect to venue in Minnesota, that location would be more convenient for Uponor's

27  witnesses. It is also where records are maintained by Uponor.

28

1   Should Uponor choose to name Third-Party Defendants in this case, including entities

2   incorporated in, or whose locations of business are solely within the confines of, Arizona, personal

3   jurisdiction issues may arise due to this litigation remaining in the Southern District of Illinois.

4   Consequently, it is Uponor's contention that the analysis related to the location of parties

5   and witnesses supports transfer of this suit from the Southern District of Illinois to either the United

6   States District Court for the District of Arizona or to the United States District Court for the

7   District of Minnesota.

8

9   The third element of the convenience analysis concerns the ease of access to sources of

10   proof. Once again, given the lack of any presence within the State of Illinois of either the

11   Plaintiffs, their homes, or the moving Defendants, there are literally no sources of proof located in

12   the Southern District of Illinois. The sources of proof are primarily in Arizona or in Apple Valley,

13   Minnesota where Uponor, Inc. has its principal place of business.

14

15   As Plaintiffs' counsel are aware, it is the normal practice of the parties in litigation

16   involving the plumbing product at issue, to conduct visual inspections of homes. Following such

17   visual inspections, destructive testing is conducted, which involves removal of fittings, sampling

18   local water chemistry, and taking measurements relating to water flow within homes, following

19   which requests are routinely made for depositions of local plumbers, product suppliers, and

20   building officials or water purveyor representatives. All these elements of proof are in Arizona;

21   none of them are in Illinois.

22

23   Alternatively, Plaintiffs' "of counsel" attorneys have previously, in connection with similar

24   claims, requested depositions and documents from Uponor. These documents and witnesses, to the

25   extent that they are under Uponor's control, are in Minnesota. Simply because Uponor, Inc. is

26   incorporated in Illinois does not mean it has any germane documents or witnesses there. As is

27   apparent from the foregoing discussion, no sources of proof or witnesses related to Plaintiffs'

28

11

1  claims are located in the Southern District of Illinois, or for that matter the State of Illinois.  Thus,

2  transfer of this litigation to the United States District Court for the District of Arizona, or the

3  United States District for the District of Minnesota is favored pursuant to this element of the

4  convenience analysis.

5

6  The fourth, and final, element of the convenience analysis under §1404(a) relates to the

7  "situs" of material events.  Obviously, the Southern District of Illinois in particular, and Illinois in

8  general, was not the "situs" of any event relevant to this litigation.  Uponor's offices and facilities

9  are located in Minnesota, and the homes at issue in this litigation (potentially 1,000 of them) are in

10 Arizona.  Consequently, there are no "material events" that have occurred in Illinois, and Plaintiffs

11 have not alleged a single fact reflecting any relevant or actionable activity by the moving

12 Defendants within the Southern District of Illinois, or Illinois in general.

13

14 In that regard, the facts of this case are substantially the same as those in *Humphries v.*

15 *Coppercrest,* supra. or *Murphy v. Avon Products,* supra, in which Arizona plaintiffs filing actions

16 in Illinois had their cases transferred back to Arizona, where the majority of witnesses and sources

17 of proof in each case were located, and where all the events alleged in the respective pleadings

18 occurred.

19 Given the foregoing, this fourth element of the convenience analysis also weighs in favor of

20 transfer of this litigation to either the District Court for the District of Arizona or the District Court

21

22 for the District of Minnesota as opposed to the Southern District of Illinois.

23          **3.     Transfer Of This Litigation Is In the Interest Of Justice**

24 As referenced above, the "interest of justice" analysis includes consideration of the

25 transferee court's familiarity with applicable law.  It is apparent from Plaintiffs' Complaint that the

26 State of Arizona—the location of all of the events alleged, as well as the applicable law for the

27 statutory cause of action alleged—has a far more substantial interest in the outcome of this lawsuit

28

than the State of Illinois. From an efficiency and consistency perspective, transfer of this matter from the Southern District of Illinois promotes the interests of justice.

Additionally, the *George* case pending in the District of Minnesota, has been assigned to Judge Ann C. Montgomery, who has presided over similar issues regarding brass plumbing fittings manufactured pursuant to a different industry standard than those involved in the present litigation. Judge Montgomery has significant background regarding the facts and the issues presented in the instant suit, and the law applicable to this matter. Minnesota, like Arizona, has a greater interest in the issues presented by this litigation than Illinois, given the location of Uponor, Inc.

Finally, from the perspective of consistency in rulings and precedent, the 9th Circuit Court of Appeals has already issued a ruling with respect to claims involving brass fittings used in potable water plumbing systems; and the 8th Circuit Court of Appeals, in connection with litigation pending before Judge Montgomery involving a different brass fitting system, has issued rulings as well.

In light of the foregoing, it is Uponor's position that the third element of the transfer analysis, relating to the interest of justice, weighs heavily in favor of transfer of this litigation from the Southern District of Illinois, and that transfer is therefore appropriate under §1404(a).

## C.   APPROPRIATE TRANSFEREE VENUE

Based upon the facts set forth above and the law concerning the application of §1404(a), Uponor contends that it has established a proper basis for transferring this litigation from the Southern District of Illinois. With respect to the question of the appropriate transferee court, as discussed above, Uponor believes that there are two options: the United States District Court for the District of Arizona, or the United States District Court for the District of Minnesota. The relevant factors favor transfer to either jurisdiction. For Arizona, these include: the location of the named plaintiffs, and purportedly their homes; the location of local witnesses including plumbers,

1   developers, local building and water officials; and, federal courts familiar with the particular issues

2   involved in this litigation.  Alternatively, the United States District Court in Minnesota has

3   experience with the issues presented by this litigation, is the location of witnesses of the moving

4   Defendants, and is the home jurisdiction of Uponor, Inc.  Depositions of Uponor witnesses,

5

6   conducted by Plaintiffs' "of counsel" attorneys, already have taken place in Minnesota on several

7   prior occasions.  In light of the foregoing, Uponor believes that either transferee forum satisfies the

8   criteria of §1404(a).

9       Undertaking a strict analysis of the number, nature and quality of parties, witnesses, and

10   evidence, as well as the number of potential third party witnesses likely to be subject to subpoena

11   or compulsory attendance, Uponor believes the factors favor transfer to the United States District

12

13   Court for the District of Arizona.  Applying the law and the facts discussed above, while Uponor

14   would accept transfer of this litigation to either the United States District Court for the District of

15   Arizona or the United States District Court for the District of Minnesota, Uponor believes the

16   aforementioned analysis ultimately favors transfer of to Arizona, with the most appropriate

17   alternative transfer to the United States District Court for the District of Minnesota.

18   **III.**    **CONCLUSION**

19       For the foregoing reasons, Uponor requests that this Court grant its §1404(a) Motion to

20

21   Transfer/Change of Venue, and Transfer this matter to the United States District Court for the

22   District of Arizona; or, alternatively, transfer this matter to the United States District Court for the

23   District of Minnesota, Judge Ann C. Montgomery presiding.

24       WHEREFORE, Defendants UPONOR, INC., WIRSBO COMPANY and UPONOR

25   WIRSBO COMPANY, pray that this Court will grant their Motion to Transfer/Change of Venue,

26   transfer this litigation either to the United States District Court for the District of Arizona, or the

27

28

1 | United States District Court for the District of Minnesota, and grant such other and further relief as

2 | the Court may deem appropriate.

3

4

5

6 | UPONOR, INC., WIRSBO COMPANY
and UPONOR WIRSBO COMPANY

7

8 | By:_____
One of Their Attorneys

9 | Ted L. Perryman

10 | ROBERTS PERRYMAN
1034 S. Brentwood Blvd.

11 | Suite 2100
St. Louis, MO 63117

12 | Telephone:  314-421-1850
Facsimile:  314-421-4346

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28